**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Harvey Hernandez, | No. CV-17-02155-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Town of Gilbert, et al., | |
| Defendants. | |

Pending before the Court are the parties' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants Town of Gilbert (the "Town") and Officer Steve Gilbert ("Officer Gilbert") (collectively "Defendants") moved for partial summary judgment on Counts I and VI. (Doc. 49). Plaintiff also moved for partial summary judgment on Count VI. (Doc. 54). Oral argument was held on April 5, 2019. The Court has now considered the Motions, Responses, and Replies, along with arguments of counsel and relevant case law.

**I.    BACKGROUND**

The following facts are taken from Plaintiff's and Defendants' "Joint Statement of Facts in Support of the Parties' Respective Motions for Partial Summary Judgment," (Doc. 51, "JSOF"), or were stipulated to by the parties, (Doc. 36). On May 5, 2016, Gilbert Police Department Officer Chris Robinson saw Plaintiff's vehicle swerving on the road. Plaintiff saw emergency lights flashing behind him as he drove. Officer Robinson activated the police vehicle's siren. Plaintiff continued driving until he reached his

residence, opened the garage door remotely, pulled into the two-car garage, shut off his vehicle, and then started to close the garage door remotely. Officer Robinson stopped the garage door from closing and waited for back-up officers to arrive. For the next 2 1/2 minutes, Officer Robinson gave at least 13 verbal orders for Plaintiff to step out of the vehicle. Officer Robinson also verbally warned Plaintiff that he would be arrested for failing to obey a police officer. Plaintiff refused Officer Robinson's verbal commands, repeatedly stating "no, I'm right here." About 90 seconds after Plaintiff drove into the garage, Officer Justin Leach arrived. Officers Robinson and Leach approached the vehicle with guns drawn. Officer Robinson approached the driver's door, where there was less than 3 feet of space between the driver's door and garage wall. Officer Robinson told Plaintiff at least 7 more times to get out of the vehicle because he was under arrest. Plaintiff refused to leave his vehicle. For the next 60 seconds, Officer Robinson applied physical force to Plaintiff to get him out of the vehicle. Officer Robinson used control holds such as grabbing Plaintiff's left forearm, his left leg, and his head. Plaintiff resisted these control holds by tucking his arms close to his body and repeatedly stating, "No, I'm not under arrest." Officer Robinson attempted another control hold technique, by grabbing Plaintiff's right ear. Plaintiff stated, "Sorry, dude, I'm not going nowhere." Officer Robinson detected that Plaintiff's eyes were bloodshot, his speech was slurred, and his breath smelled of alcohol. Officer Robinson then deployed pepper spray in Plaintiff's face. Officer Robinson told Plaintiff at least 8 more times that he was under arrest and to get out of the vehicle. Plaintiff continued to ignore these commands. Officer Robinson warned Plaintiff at least 5 times that a police dog was going to be used to bite him and pull him from the vehicle if Plaintiff did not step out. Plaintiff responded, "I'm not going nowhere, dude," "You're on my property, bro. You can't do this shit," and "No, I am not." Officer Gilbert approached Plaintiff's vehicle from about 6-10 feet away with his police dog, Murphy, on leash. Both the driver's door and front passenger door of Plaintiff's vehicle were open. Officer Gilbert loudly stated, "Sir, step out of the car or the dog will bite you. Step out of the car, step out of the car." Plaintiff closed the driver's door and leaned to his right to

close the front passenger door. Officer Gilbert released K9 Murphy to enter the vehicle through the front passenger door. K9 Murphy bit Plaintiff on the left bicep. Officer Robinson ordered Plaintiff to crawl out of the vehicle. Plaintiff repeatedly yelled "Alright." After about 36 seconds, Officer Gilbert commanded K9 Murphy to release the bite. About 14 seconds later, K9 Murphy released the bite on Plaintiff's left upper arm, but hung onto Plaintiff's shirt for another 22 seconds before completely releasing the bite. After K9 Murphy released the bite, Officers Robinson and Leach physically pulled Plaintiff from the vehicle and moved him to the driveway to handcuff him. At the time of this incident, Plaintiff was under the influence of an intoxicating liquor, and had a blood alcohol concentration of .146.

While Plaintiff and Defendants view of the facts differ regarding what happened after K9 Murphy first bit Plaintiff, the Court notes that the officer body-camera videos worn by officers at the scene (the "Videos"), which were submitted as evidence (JSOF, Exhibits E, F, G), provide a picture of what occurred after K9 Murphy entered the vehicle. Even after K9 Murphy was called off, Plaintiff is seen telling officers that they were on his property and holding on to the headrest as officers attempt to remove him from the vehicle. (JSOF, Exhibit E at 8:44). Officers were then forced to pull Plaintiff from the vehicle, as Plaintiff continued to resist. (JSOF, Exhibit E at 9:10).

Plaintiff commenced this action in state court on May 5, 2017, and the action was subsequently removed to this Court. (Doc. 1). After orders dismissing multiple counts and multiple defendants, (Docs. 19, 25, 42), the remaining counts before the Court are as follows: (1) Count I against the Town for Negligence and Gross Negligence, (2) Count II against the Town for Negligent Training, and (3) Count VI, brought pursuant to 42 U.S.C. § 1983, against Officer Gilbert alleging the use of excessive force in violation of the Fourth and Fourteenth Amendments. Plaintiff now moves for partial summary judgment on Count VI, (Doc. 54), and Defendants move for partial summary judgment on Counts I and VI, (Doc. 49).

///

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party, *Ellison v. Robertson*, 357 F.3d

1072, 1075 (9th Cir. 2004). "When the record contains a 'videotape capturing the events in question,' and that videotape 'quite clearly contradicts the version of the story told by' one party, the court need not adopt that party's version of the facts, but should instead rely on the facts as presented in the recording." *Hulstedt v. City of Scottsdale*, 884 F. Supp.2d 972, 989 (D. Ariz. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

Federal Rule of Civil Procedure 56 "is silent as to how the court must analyze simultaneous cross-motions for summary judgment." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001). Even though the Court is presented with cross-motions for summary judgment, the Court must view the materials on file in the light most favorable to the nonmoving party. *Oshilaja v. Watterson*, No. CV 05-3429-PHX-RCB, 2007 WL 2903029, at *4 (D. Ariz. Sept. 30, 2007) (citing *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990)).

### III. PLAINTIFF'S MOTION

Plaintiff moved for partial summary judgment on Count VI—excessive force in violation of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983. (Doc. 54). Defendants filed a Response, (Doc. 57), and Plaintiff filed a Reply, (Doc. 62). Plaintiff argues that Officer Gilbert used unreasonable force by ordering K9 Murphy to "bite and hold [Plaintiff] for over a minute while [Plaintiff] sat unarmed in his automobile[.]"[1] (Doc. 54 at 1).

#### A. Legal Standard

Section 1983 of Title 42 of the U.S. Code provides a cause of action for persons who have been deprived their constitutional rights by persons acting under color of law. Section 1983 "is not itself a source of substantive rights" but only provides a cause of action "for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137,

---

[1] Plaintiff, however, stipulates that K9 Murphy bit Plaintiff's arm for about 50 seconds, and then held on to Plaintiff's shirt for another 22 seconds. (JSOF ¶ 35–36).

144 n.3 (1979). Claims of excessive force before or during an arrest are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also Smith v. City of Hemet*, 394 F.3d 689, 700–01 (9th Cir. 2005) ("It is clear that under *Graham*, excessive force claims arising before or during arrest are to be analyzed exclusively under the [F]ourth [A]mendment's reasonableness standard."). An officer's use of a police dog is subject to an excessive force analysis. *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994), *as amended* (May 31, 1994). In determining whether a law enforcement officer used excessive force in violation of the Fourth Amendment, the Court considers "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397. "Determining the reasonableness of an officer's actions is a highly fact-intensive task for which there are no per se rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). In evaluating the "objective reasonableness" of a use of force, the Court generally proceeds in three steps. *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003). "First, we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Id.* (citing *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994)). "Second, we assess the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396). "Third, we balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Id.* When "there are no genuine issues of material fact and the relevant set of facts has been determined, the reasonableness of the use of force is a pure question of law." *Lowry v. City of San Diego*, 858 F.3d 1248,

1256 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1283 (2018) (internal quotation marks and citation omitted). However, "[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

**B. Type and Amount of Force Inflicted**

The first step is to assess the severity of the intrusion on Plaintiff's rights by evaluating the type and amount of force used. "[C]haracterizing the quantum of force with regard to the use of a police dog depends on the specific factual circumstances." *Lowry*, 858 F.3d at 1256. In this case, the dog bit Plaintiff on his left bicep, which lasted about 50 seconds. (JSOF ¶¶ 32, 35, 36). As far as Plaintiff's injuries, there is no dispute that Plaintiff suffered injuries. The officers at the scene reported that Plaintiff was bit by the dog, "sustained several lacerations to his left bicep," and was treated on the scene and transported to the hospital. (Doc. 56-3 at 7), (Doc. 56-4 at 3). Photos further show the considerable injuries to Plaintiff's left arm. (Doc. 56-12 at 2–3). Plaintiff states that he has severe and permanent injuries including disfiguring scars resulting in more treatment and surgery, and that he was hospitalized for three days for medical treatment as a result of the bite.[2] (Doc. 56-1 ¶¶ 21, 23).

Plaintiff cites to *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994), in which the court found that the force used to arrest Chew was "severe" when the dog had to bite Chew three times before achieving an effective hold, the dog dragged Chew between four and ten feet, and Chew's arm was "nearly severed." In reply, Defendants state that the "level of force used [here] was not severe," and cite to *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). (Doc. 57 at 5). In *Miller*, the Ninth Circuit held "that the intrusion on Miller's Fourth Amendment interests was a serious one," after the officer unleashed the dog to search for Miller, the dog located and held Miller, and the officer took between 45

---

[2] In support of this assertion, Plaintiff submits medical bills from the "Arizona Center for Hand Surgery," but no statement or affidavit attesting to Plaintiff's extended prognosis. (Doc. 56-9 at 2–4). There is however no dispute that Plaintiff sustained injuries requiring medical attention.

and 60 seconds to arrive at a location where he could see Miller. 340 F.3d at 960–61, 964. The court noted that the officer's dog ordinarily bit a suspect for only about four seconds, but in that case, the dog bit Miller for "an unusually long time period, an action that might cause a suspect pain and bodily injury." *Id.* at 964. "Miller's skin was torn in four places above his elbow, and the muscles underneath were shredded." *Id.* at 961. He had torn muscles, the injury went as deep as the bone, and he underwent surgery and spent several days in the hospital. *Id.* In contrast to *Chew* and *Miller*, the Ninth Circuit affirmed in *Lowry* the district court's finding that the force used by a police dog was "moderate," not "severe," when the dog bit the suspect on the lip and was called off within seconds. 858 F.3d at 1257.

It is undisputed here that Officer Gilbert commanded K9 Murphy to release the bite after approximately 36 seconds, and that K9 Murphy released the bite approximately 14 seconds later—a total of 50 seconds. The facts seem most analogous to *Miller*, and the Court finds that given the amount of time that K9 Murphy bit and held Plaintiff, the amount of force used was serious.

### C. Government Interests at Stake

In order to assess the importance of the government interests at stake, the Court looks at (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. The Court can also consider other factors such as "the availability of alternative methods of capturing or subduing a suspect," "whether a warrant was used, whether the plaintiff resisted or was armed, whether more than one arrestee or officer was involved, whether the plaintiff was sober, whether other dangerous or exigent circumstances existed at the time of the arrest, and the nature of the arrest charges." *Chew*, 27 F.3d at 1440 n.5. "These factors are not exclusive, and we consider the totality of the circumstances." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793–94 (9th Cir. 2014).

///

### 1. Severity of the Crime at Issue

The facts relevant to the "severity of the crime" prong are not genuinely at issue. At the time of the events at issue in this case, Plaintiff had a blood alcohol concentration of .146 and was under the influence of an intoxicating liquor. (Doc. 36). Officer Robinson saw Plaintiff's vehicle swerving and activated his emergency lights behind Plaintiff's car. (JSOF ¶¶ 1–2). Plaintiff argues that DUI is a misdemeanor offense, not necessitating the use of such force. (Doc. 54 at 5). While there is no question that DUI is a serious offense, *see Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (stating that DUI is considered a serious offense that weighed in favor of police officer), some courts have found that under certain circumstances the severity of a DUI (a misdemeanor) in the excessive force analysis is considered low. *See Orr v. Cal. Highway Patrol*, No. Civ. 2:14-585 WBS EFB, 2015 WL 848553, at *1, *11 (E.D. Cal. Feb. 26, 2015) (finding that the driver's risk to public safety was low after plaintiff responded to flashing lights and pulled over, initially cooperated with the officer, and had exited the vehicle). But here, Plaintiff fails to acknowledge the facts compounding his initial offense—it is undisputed that Plaintiff saw the flashing lights behind his vehicle, continued to drive home, attempted to close the garage door, and then refused to exit his vehicle after numerous orders from officers alerting Plaintiff that he was under arrest. The Court finds that in light of the facts in this case, this factor weighs against granting summary judgment in favor of Plaintiff.

### 2. Immediacy of the Threat

The immediacy of the threat posed by the suspect is the most important factor in this analysis. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). The government has a "compelling interest in removing alcohol-impaired drivers from the roads because they pose a clear threat to the safety of the public." *Knapp v. Miller*, 799 P.2d 868, 872 (Ariz. Ct. App. 1990). Here, there is no dispute that Plaintiff was parked in his garage with the car turned off. It is also undisputed that Plaintiff was unarmed. Defendants argue that because Plaintiff still remained behind the wheel of the vehicle, the vehicle could be used as a weapon against the officers. (Doc. 58 at 3). Furthermore,

Officer Gilbert testified that because neither Plaintiff nor his vehicle had been searched, Officer Gilbert considered that whether Plaintiff was armed was "unknown." (Doc. 58 at 45). Officer Gilbert also testified that he considers the possibility of a suspect being armed "based on the totality of the circumstances," and that "once someone starts to act in a way that they're fleeing from the police, that starts to heighten our awareness that there's something else going on than just someone who just doesn't want to stop." (Doc. 58 at 45–46).

Plaintiff cites to *Chew*, asserting that the court found that Chew quietly hiding in a scrapyard as police searched for him did not suggest that Chew was engaging in threatening behavior during this time. (Doc. 54 at 8). In *Chew*, the court held that the record did not "reveal an articulable basis for believing that Chew was armed or that he posed an immediate threat to anyone's safety." *Chew*, 27 F.3d at 1441. But these facts are hardly analogous to the facts here. Plaintiff did not merely refuse to exit the vehicle. Plaintiff resisted as officers attempted to remove him from the vehicle, over a span of 8 minutes, creating an uncertain situation for officers. An officer could have reasonably felt that Plaintiff was a threat due to his continued verbal and physical resistance, state of intoxication, position in his vehicle, and the fact that he had not yet been searched. *See Schoettle v. Jefferson Cty.*, 788 F.3d 855, 860 (8th Cir. 2015) (recognizing that an officer's use of force to remove driver of parked car from vehicle may be justified when driver is suspected to be intoxicated); *Mattos*, 661 F.3d at 444 (plaintiff was potentially threatening while remaining in the driver seat with keys in the ignition).

Plaintiff's and Defendants' experts offer conflicting views regarding this factor. Plaintiff's expert writes that Plaintiff "was not an immediate threat to the peace officers or community," (Doc. 56-6 at 9), while Defendants' expert states that the Plaintiff "posed an immediate threat to the officers and the public because [he] had not been searched." (Doc. 58 at 19). Furthermore, Plaintiff was severely intoxicated and remained behind the wheel of his vehicle. Defendants have supplied evidence sufficient for a jury to find that Plaintiff posed an immediate threat to the officers and community. Accordingly, this factor weighs

against granting summary judgment in favor of Plaintiff.

### 3. Actively Resisting Arrest

The Court looks next to whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight. Plaintiff asserts that he was not actively resisting arrest nor attempting to flee, and that at most, he was "passively resisting arrest." (Doc. 54 at 9). Yet it is undisputed that Plaintiff was not complying with the officers' requests to exit the vehicle—the Videos and testimony clearly show that Plaintiff was not compliant. Plaintiff's expert states that while the Videos show that Plaintiff did not comply with the officers, "he did not resist arrest by use of force," and that he should be compared to "a passive demonstrator." (Doc. 56-6 at 12, 17). Defendants' expert states that Plaintiff "was using physical force against Officer Robinson to resist arrest" and that Plaintiff's "uncooperative and defiant behavior took this encounter to another level." (Doc. 58 at 18–19).

"[T]he level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance." *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010)). The Ninth Circuit has noted that the categorization of resistance "runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer," *id.,* and that "[e]ven purely passive resistance can support the use of some force." *Bryan*, 630 F.3d at 830. "[A]ctive resistance is not to be found simply because of a failure to comply with the full extent of an officer's orders." *Nelson*, 685 F.3d at 882 (finding plaintiff's single act of non-compliance with an officers' order to disperse, without any attempt to threaten the officers or place them at risk, did not rise to the level of active resistance).

There is no question that Plaintiff exercised more than mere passive resistance. *See, e.g.*, *Dinan v. Multnomah Cty.*, No. 3:12-CV-00615-PK, 2013 WL 324059, at *11 (D. Or. Jan. 28, 2013) ("There is no doubt that brushing off a deputy's arm constitutes some level of resistance, and resistance that is more active than passive."). It is undisputed that

Plaintiff verbally and physically refused to get out of the vehicle after at least 20 verbal orders from officers. It is also undisputed that officers then used control holds, such as grabbing Plaintiff's forearm, leg, head, and ear, and Plaintiff resisted these holds by tucking his arms close to his body physically holding on to the steering wheel and verbally refusing to exit the vehicle. Numerous additional orders were given to Plaintiff, including alerting him of the police dog that would enter the vehicle. Plaintiff proceeded to close the driver's door and leaned over to close the passenger door. Plaintiff continued to resist after K9 Murphy released him by holding on to the headrest as officers attempted to remove him from the vehicle. Plaintiff's resistance "was much milder than other forms of active resistance that could come under the rubric of struggling with an officer, such as brandishing a weapon, advancing on the officer, or fighting with the officer," but Plaintiff did more than passively resist arrest over an 8-minute span. *Id.* (internal quotation marks and citation omitted).

There is sufficient evidence for a jury to find that Plaintiff actively resisted arrest. Accordingly, this factor weighs against granting summary judgment in favor of Plaintiff.

### 4. Alternative Methods

The Court may also consider the availability of alternative methods of capturing or subduing a suspect, even though officers are not required to use the least intrusive degree of force available. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Plaintiff nonetheless argues that "Officers did not exhaust alternative methods of arresting" him before releasing K9 Murphy. (Doc. 54 at 10). Plaintiff asserts that Officer Gilbert had a taser on him "but did not consider using it," and cites to Officer Gilbert's deposition testimony. (Doc. 54 at 11). But Officer Gilbert's statement is taken out of context. In his deposition, Officer Gilbert explained why he did not use the taser, noting the difficulties that accompanied the physical positioning of the officers and Plaintiff. Officer Gilbert testified that he had a taser in his possession that evening, but that it would have been dangerous to get in a position to be able to use the taser due to the car being in the garage and the small area in which to maneuver. (Doc. 58 at 47–48). He does not indicate, as Plaintiff contends, that

he merely bypassed any consideration of using the taser. Defendants' expert also stated that taser deployment may not have been advisable due to pepper spray having been sprayed in the vehicle, as well as the proximity of the area. (Doc. 58 at 23–24). Plaintiff has provided no evidence that using a taser was a viable option.

Plaintiff also contends that "[o]ther alternatives such as waiting till [Plaintiff] was less intoxicated, pulling him out, or even just talking to him were not exhausted." (Doc. 54 at 11). In reply, Defendants assert that Plaintiff ignores the alternative methods that officers did use—"over 40 verbal commands, control holds on Plaintiff's mandibular angle nerves, grabbing Plaintiff's left forearm, left leg, and head, grabbing his shirt collar, grabbing his right ear, and using pepper spray." (Doc. 57 at 8).

Again, Defendants have provided sufficient evidence for a jury to find that alternative methods of arrest were not viable. Accordingly, this factor also weighs against granting summary judgment in favor of Plaintiff.

### D. Balancing

Lastly, in order to determine whether Officer Gilbert's use of K9 Murphy was constitutionally reasonable, the Court must balance the gravity of the intrusion on Plaintiff against the government's need for that intrusion. In doing so, the Court notes that at the core of these factors is reasonableness. The Court looks to whether Officer Gilbert's actions were "objectively reasonable" in light of the facts and circumstances that he confronted. *Graham*, 490 U.S. at 397.

In light of the analysis above, and viewing evidence in the light most favorable to Officer Gilbert (the nonmovant), a reasonable jury could conclude that Officer Gilbert's use of K9 Murphy was justified against Plaintiff under this set of facts. The "reasonableness" inquiry here is "not well-suited to precise legal determination," and the Court therefore denies Plaintiff's Motion for Partial Summary Judgment (Doc. 54).

### IV. DEFENDANTS' MOTION

Defendants moved for partial summary judgment on Count I (Negligence) and Count VI (based on Qualified Immunity). (Doc. 49). Plaintiff filed a Response, (Doc. 59),

and Defendants filed a Reply, (Doc. 61).

### A. Count I

Defendants argue that Count I should be dismissed because the Arizona Supreme Court recently held in *Ryan v. Napier*, 425 P.3d 230, 233 (Ariz. 2018), that "plaintiffs cannot assert a negligence claim based solely on an officer's intentional use of physical force." (Doc. 49 at 6–7). Plaintiff does not contest that *Ryan* precludes a claim for negligence under these circumstances, but requests leave from the Court to amend his Complaint contending that the facts alleged in the Complaint constitute a claim for battery. (Doc. 59 at 8–9). Defendants reply arguing that (1) if Plaintiff wants to request leave to amend, Plaintiff should follow the procedures set forth in Rule 15, and (2) the Court previously issued an order with a deadline to amend pleadings which has already passed. (Doc. 61 at 2) (Doc. 17 at 1).

The Court has reviewed the scheduling order from September 15, 2017 (Doc. 17). In that Order, the parties were given 60 days to amend pleadings. That deadline (November 14, 2017) has long passed. The Court will not summarily grant a request to amend based on a Response filed almost 1 1/2 years after the case was filed and almost 1 year after the deadline to amend. Defendants' motion for summary judgment on Count I will be granted.

### B. Count VI

Defendants argue that Officer Gilbert is entitled to qualified immunity on Count VI— excessive force in violation of the Fourth Amendment. Defendants specifically argue that "no binding, existing precedent informed Officer Gilbert that release of the police dog in the circumstances he faced was excessive and unconstitutional." (Doc. 49 at 9).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in

light of the specific context of the case." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016). Judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Defendants' motion focuses on the second prong, and the Court will therefore proceed directly to analyzing the second prong.

In determining whether a constitutional right was clearly established at the time of the alleged violation, "a case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)); *see also Kisela*, 138 S. Ct. at 1153 ("[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue"). The Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Kisela*, 138 S. Ct. at 1153 (quotation marks and citation omitted). While "general statements of the law are not inherently incapable of giving fair and clear warning to officers," courts may not deny qualified immunity by simply stating "that an officer may not use unreasonable and excessive force." *Id.* The Court must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Furthermore, the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152 (citations and internal quotation marks omitted); *see also City of Escondido*

*v. Emmons*, No. 17-1660 (Jan. 7, 2019) ("Under our cases, the clearly established right must be defined with specificity.").

The question here is whether clearly established law prohibited Officer Gilbert from using K9 Murphy as he did under the circumstances presented. Plaintiff raises three cases proposing that the law in the Ninth Circuit regarding police dogs was clearly established on May 5, 2016. Plaintiff cites first to *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994), asserting that *Mendoza* declares that the law around the use of force of a police dog is established. (Doc. 59 at 3–4). But Plaintiff fails to recognize two important things. First, the Court is still required to determine whether clearly established precedent existed "in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308. While it is true that *Mendoza* makes clear that the use of a police dog is subject to claims of excessive force, and that the law of excessive force "is clearly established for purposes of determining whether the officers have qualified immunity," an inquiry based on the specific facts of the case is still required. Second, to the extent that *Mendoza* indicates that general law on excessive force is sufficient for the inquiry, the Supreme Court has recently noted its previous admonitions directed specifically to the Ninth Circuit to not "define clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152. While "general statements of the law are not inherently incapable of giving fair and clear warning to officers," "specificity is especially important in the Fourth Amendment context[.]" *Id.* at 1152–53 (citations omitted).

In looking to the facts of *Mendoza*, Mendoza robbed a bank, fled from officers, and hid under some bushes on private property. 27 F.3d at 1358. Deputies believed Mendoza was armed due to information from headquarters, and Mendoza did not surrender when warned that a police dog would be released if he did not come out from under the bushes. *Id.* The dog located Mendoza, bit down on his arm, and pulled him out of the bushes. *Id.* The dog bit Mendoza a second time during the struggle. *Id.* The court determined that "[u]sing a police dog to find Mendoza, and to secure him until he stopped struggling and was handcuffed, was objectively reasonable under the[] circumstances." *Id.* at 1363. The

- 16 -

court noted specifically that deputies believed Mendoza was armed, he did not surrender even when warned he would be bitten by the dog, "the deputies could reasonably have believed he posed a danger not only to themselves but also to the property owners," and he continued to struggle when the dog bit him the second time. *Id.* at 1362–63.

Next, Plaintiff points to *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998), asserting that the Ninth Circuit affirmed the district court's denial of qualified immunity "where the officer allowed the canine to continue to bite the suspect despite the fact that the suspect was unable to comply because he was recoiling from the pain of the dog bite, while surrounded by police officers with guns drawn." (Doc. 59 at 4). In *Watkins*, five officers responded to a silent alarm at a commercial warehouse and saw a person running within the building. *Id.* at 1090. The officers had no evidence as to whether the person was armed. *Id.* Officers announced twice that if the suspect did not give himself up, the police dog would be released and would bite. *Id.* The dog was released, located Watkins hiding in a car, and bit him. *Id.* When the K9 officer arrived to where the dog was biting Watkins, the officer did not call the dog off, and instead ordered the suspect to show his hands. *Id.* The officer pulled Watkins out of the car, and the dog continued to bite until Watkins showed his hands. *Id.* The duration of the dog bite after the officer caught up to the dog lasted approximately 30 seconds. *Id.* Watkins had fractures and lacerations in his foot, requiring surgeries. *Id.* at 1091. Watkins claimed that he was helpless and surrounded by police officers with their guns drawn. *Id.* at 1090–91. The Ninth Circuit affirmed the district court's denial of qualified immunity agreeing that "it was clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force[.]" *Id.* at 1093.

Lastly, Plaintiff points to *Koistra v. County of San Diego*, 310 F. Supp.3d 1066 (S.D. Cal. 2018), but as Defendants have correctly noted, the decision in *Koistra* was not issued at the time of the incident here, and is therefore not relevant to this analysis. *Brosseau*, 543 U.S. at 198 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the

conduct.").

In response, Officer Gilbert asserts that he relied on *Strickland v. Shotts*, 155 F. App'x 908 (7th Cir. 2005), "for the principles that (1) DUI is a serious offense that poses an immediate threat to the officer on the scene and others nearby, (2) a suspect fighting officers at the time of arrest poses an immediate threat to the officers, and (3) using a police K9 to subdue a suspect in these circumstances is objectively reasonable under *Graham v. Connor*." (Doc. 49 at 10). The Court may consider the law of another circuit or district when there is no binding precedent. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).

In *Strickland*, officers attempted to stop a car driven by Strickland, but Strickland continued driving and a car chase ensued. 155 F. App'x at 909. Strickland then stopped the car, reached into the passenger compartment, and fled on foot, entering a private residence where officers eventually found him hiding in a bathroom. *Id.* "Three police officers attempted to subdue Strickland, who continued to resist by kicking and thrashing his legs at the officers." *Id.* "Because of Strickland's thrashing and [the officer's] concern that Strickland may have been armed," the officer released the police dog and instructed him to bite Strickland's leg. *Id.* The Seventh Circuit held that the use of the police dog was not objectively unreasonable in this case, noting that (1) Strickland was driving while intoxicated; (2) Strickland acknowledged that during the arrest, he posed an immediate threat to officers; (3) Strickland did not dispute the contention that he reached in a passenger compartment, perhaps to obtain a weapon, just before leaving his car; and (4) Strickland admitted that he actively resisted arrest when he fled by car and by foot. *Id.* at 909–10.

The Court notes that both *Mendoza* and *Watkins* involved factual situations where officers used a police dog to locate a hiding suspect—which is not the case here. And while the district court in *Watkins* held that the duration of the bite in that case was excessive, the Ninth Circuit affirmed noting only that extended duration of the bite *could* be excessive. *Watkins*, 145 F.3d at 1093. The facts in *Watkins* are distinguishable from the facts here. In *Watkins*, the suspect was out of the car and surrounded by multiple

officers with guns drawn. Here, Plaintiff, while severely intoxicated, remained in control of his vehicle after resisting officers for 8 minutes. Officers did not have an opportunity to search Plaintiff or his vehicle for weapons or render the vehicle inoperable and officers were restricted by the narrow confines of the garage. And as noted above, Plaintiff had not completely surrendered as further evidenced by his continued resistance even after the dog released the bite. The duration of the bite in *Watkins* occurred under a very different set of facts. The facts here are more analogous to *Strickland*, where the officers use of a dog was in response to a noncompliant, intoxicated suspect.

Therefore, even if the Court were to determine that a constitutional violation occurred, Officer Gilbert's conduct did "not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Kisela*, 138 S. Ct. at 1152. In other words, at a minimum, it was not clearly established that an officer in Officer Gilbert's position acted unreasonably, thus violating Plaintiff's Fourth Amendment rights. Accordingly, the Court grants Defendants' motion for summary judgment on Count VI based on qualified immunity.

## V. REMAND

With the dismissal of Counts I and VI, the only remaining count is Count II against the Town for Negligent Training. The Court "may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Because the only federal-law claim has been dismissed, the Court remands this case to state court.

///

///

## VI. CONCLUSION

**IT IS ORDERED** denying Plaintiff's Motion for Partial Summary Judgment (Doc. 54) and granting Defendants' Motion for Partial Summary Judgment (Doc. 49).

**IT IS FURTHER ORDERED** that the Clerk of Court shall remand this case to Maricopa County Superior Court and terminate this action.

Dated this 10th day of April, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge